## IN THE MATTER OF THOMAS MURPHY.

1. An order of filiation for the maintenance of a bastard may be made at any time after the bastard is born, and before he is twenty-one years of age, but it cannot be made before the birth of the bastard.

2. The provisions of the second and third sections of the bastardy act are only for the security of the township and for the detention of the putative father before the birth, until the bastard is born and an order of filiation made. In this proceeding no order of filiation can be made, either by the justice or upon the appeal. That order must be made by *two* justices, by virtue of the first section of the act.

3. The discharge, authorized by the fourth section of the bastardy act, of any person committed " by virtue of that act" only applies to persons committed for detention until an order of filiation can be made, and not to persons committed for disobeying the order of filiation, although the language of the section is broad enough to include such order made by virtue of the first section of " that act."

4. Where, in the revision of statutes, by incorporating several former statutes into one, the construction of the words would give a meaning clearly at variance with the intention of the law, the true construction may be arrived at by giving such words the meaning in which they were used in the old statute.

5. The intention of the draftsman of a statute, or of the legislature who passed it, not expressed in the statute itself, affords no legitimate ground to control or influence the judicial construction of it.

This was an application for a *mandamus* to C. H. Andruss, esquire, made upon the following state of the case, agreed upon by the parties :

Jesse Williams and Charles P. Day, two of the justices of the peace of the county of Essex, on the application of the overseers of the poor of the township of Orange, and for the relief of said township, made their order in writing, bearing date *June* 5, 1851, charging Thomas Murphy to be the putative father of a bastard child, born of one Mary Ann Nicholson on the 25th day of March, 1851, *prout* a copy of the said order : whereupon notice thereof being duly given to said Thomas Murphy,

and he failing to perform the same, was by a warrant, under the hands and seals of said justices, in default of giving security, as provided for by the first section of the act concerning bastards, committed to the jail of the county of Essex. The said Thomas Murphy thereupon duly applied to Caleb H. Andruss, one of the justices of said county, for his discharge, pursuant to the fourth section of the act for the maintenance of bastard children, who issued his summons to the said overseers, according to said act. They appeared, and, after argument, the said justice declined to discharge the applicant, (being of opinion that the act did not contemplate such a discharge in the case of a person committed under the first section of said act).

The order was in the form following :

State of New Jersey, Essex county, ss.—The order of Jesse Williams and Charles R. Day, esquires, two of the justices of the peace in and for the said county of Essex, made the fifth day of June, in the year of our Lord one thousand eight hundred and fifty-one, concerning a female bastard child, lately born in the township of Orange aforesaid of the body of Mary Ann Nicholson, single woman.

Whereas it hath appeared unto us, the said justices, as well upon the complaint of the overseers of the poor of the said township of Orange, as upon the oath of the said Mary Ann Nicholson, that she, the said M. A. N., on the twenty-fifth day of March, now last past, was delivered of a female bastard child in the said township of O., in the said county, and that the said bastard child is now living and chargeable to the said township of O., and likely so to continue ; and further, that Thomas Murphy, of Orange, in the said county, laborer, did beget the said bastard child on the body of the said M. A. N. And whereas the said T. M. hath appeared before us, in pursuance of our summons for that purpose, but hath not shown any sufficient cause why he, the said T. M., shall not be adjudged the reputed father of the said bastard child, we, therefore, upon examination of the matter of and concerning the premises, as well upon the oath of the said M. A. N. as otherwise, do hereby adjudge him, the said T. M., to be the reputed father

In the matter of Thomas Murphy.

of the said bastard child. And therefore we do order, as well for the better relief of the said township of O. as for the sustentation and relief of the said bastard child, that the said T. M. shall and do forthwith, upon notice of this our order, pay, or cause to be paid, to the said overseers of the poor of the said township of O., or to some or one of them, the sum of fifty dollars, for and towards the lying-in of the said M. A. N. and the maintenance of the said bastard child to the time of making this our order. And we do also hereby further order, that the said T. M. shall likewise pay, or cause to be paid, to the overseers of the poor of the said township of O. for the time being, or to some or one of them, the sum of two dollars weekly and every week, from the day of the date of this present order, for and towards the keeping, sustenance, and maintenance of the said bastard child for and during so long time as the said bastard child shall be chargeable to the said township of O. And we do further order, that the said M. A. N. shall also pay, or cause to be paid, to the said overseers of the poor of the said township of O. for the time being, or to some one of them, the sum of one dollar weekly and every week, so long as the said bastard child shall be chargeable to the said township of O., in case she shall not nurse and take care of the said child herself.—Given under our hands and seals, the day and year first above written.

The following is the opinion delivered by Justice Andruss in refusing the discharge.

The question is, whether the putative father of a bastard child, against whom an order of filiation and maintenance has been made more than six weeks after the birth of the child, and who has been committed to jail for disobedience of that order, can be discharged from imprisonment under the fourth section of the act for the maintenance of bastard children.

In order to understand this question clearly, it is necessary to examine the English statutes, from which our act is copied. By such examination, it appears that section (1) is copied from statute of 18 *Eliz. c.* 3, *p.* 1576.

Section 5 is copied from statute 13 and 14 *Ch.* 2, *c.* 12

and 19, passed in 1662. Sections 2, 3, and 4 are copied from statute 6 *Geo.* 2, *c.* 31.

In each statute the language of the English statutes is exactly followed; and it is (as far as my observation extends) a rule of construction adopted by our courts, that where the phraseology of an English statute is preserved in our own statute, the same construction is to be given to our statute which was given to the English.

A proviso in our statute, which might, by its terms, seem to extend to the whole statute, will therefore be confined, by construction, to that portion of the statute to which it belonged and which it affected as it stood on the English statute book.

Acting on this rule of construction, I can have no difficulty in ascertaining the true extent of the operation of the fourth section of our bastardy act. That section, on the English statute book, is simply a proviso to the statute of *Geo.* 2, and relates only to the second section of our act. It is a proviso, that if any person is committed to jail or the house of correction by virtue of the statute 6 *Geo.* 2, *c.* 31, (corresponding to the second section of our act) he may be discharged from such imprisonment after the lapse of six weeks from the birth of the child, if no order of filiation or maintenance be made. This construction accords with the sense and reason of the law, as may be seen by the following review of the laws on the subject:

The great object of the whole law is to compel the father or mother of a bastard child to support it, and thereby relieve the township from its support. *Stat. of* 18 *Eliz. c.* 3.

To effect this object, power is given to two justices of the peace to make an order adjudging who is the father of the bastard, and what sum he shall pay weekly, or at other stated times, for its maintenance and support. This power was given by the statute of 18 *Eliz.*, the first section of our act.

The mode of enforcing obedience to this order is, first to serve the party charged with notice of it; and if he refuses or neglects to comply with it, then he is to be arrested by virtue of a warrant to be issued by the justices, and committed to jail, until he give security for performing the order or for ap-

pearing before the next sessions, and abiding by such order as they shall make. · This warrant and commitment is in the nature of an execution, and is the only mode of enforcing the order, except in cases where the party absconds, when another remedy is provided by the subsequent statute of 13 and 14 *Ch.* 2, *c.* 12, § 19, (§ 5 of our act).

In carrying out the act of 18 *Eliz. c.* 3, it was held that the justices could not proceed until the child was born and had become chargeable to the township, nor without personal summons being first made on the putative father to appear at the examination. 1 *Bac. Abr.* 521. Hence it frequently happened that the putative father would run away before the order was made, and leave the charge of the bastard on the township. *Section* 1 *of* 13 and 14 *Ch.* 2. To obviate this difficulty, the fifth section of our act was passed (the statute of 13 and 14 *Ch.* 2, *p.* 1662).

But, in most instances, the putative father would abscond, and leave no property behind him to be seized for the relief of the township ; and the consequence was, the putative father would go away, and get entirely clear before an order of filiation and maintenance would be made. To remedy this evil, and to secure him whilst he was within reach, and until an order could be made, the statute of 1 *Geo.* 2, *c.* 31, was passed, in 1733, forming the 2d, 3d, and 4th sections of our act. As the fourth section of our act, now under consideration, was contained in, and was taken from that statute, it may be well to give it entire. It is entitled, "An act for the relief of parishes and other places from such charges as may arise from bastard children born within the same." The preamble is as follows : "Whereas the laws now in being are not sufficient to provide for the securing and indemnifying parishes and other places from the great charges frequently arising from children begotten and born out of lawful matrimony, for remedy thereof be it enacted," &c. Then follow the words of the statute, precisely the words of the 2d, 3d, and 4th sections of our statute, using " parish " in place of " township."

By the first section of this act (section 2d of ours), any justice or justices may entertain a charge against a man of being

the father of a bastard child, either already born or not yet born, and issue a warrant for his apprehension in the first instance; and upon his being brought before them, or some other justice, the justice or justices before whom he is brought may commit him to jail, unless he shall give security to indemnify the township, or shall enter into recognizance with sufficient security to appear at the next quarter sessions, and abide and perform such order as shall be made in pursuance of *this act* (our statute reads), the 18th *Eliz.* (the English statute has it). That is to say, a charge being duly made before a justice, he may issue his warrant for the man's apprehension. When he is apprehended, he must do one of these things—either first, stand committed; second, give security to indemnify township; or, third, enter into recognizance to appear before the sessions, and abide and perform such order (of filiation and maintenance) as shall be made in pursuance of the act.

Now here is no trial authorized, no judgment of filiation, no order of maintenance, but simply a charge made against the man, and he apprehended on that charge.

The object is to get hold of him, and to keep hold of him until an adjudication and order of maintenance can be regularly made. It is possible none will ever be made. The woman may never have a child, or if she does, she may marry before she has it, or the township may be relieved in some other way. But until something of this kind occurs, he is to be kept fast to await the event.

Now it would be a great hardship to keep him in jail, or if not in jail it would be equally hard to keep his recognizance on foot, if the woman should never have a child, or should marry before she has it, therefore a proviso is added (section 2d of the English statute, section 3d of ours,) that if either of these events happen he shall be discharged.

It would, also, be a great hardship to keep him in jail, simply *on a mere charge of being the child's father*, for an unreasonable time *after the child was born;* therefore, a second proviso is added (section 3d of the English statute, section 4th of ours,) that if no order of filiation and maintenance

is made against him within six weeks from the child's birth, he may also be discharged.

The language of this proviso is this : "*provided also, and be it enacted*, that upon application made by any person who shall be committed to jail or house of correction *by virtue of this act*," &c., " he may be discharged," &c.   As the words stand in the English statute of 6 *Geo*. 2, there is not the slightest doubt that the imprisonment from which he may be discharged by virtue of this proviso is only imprisonment by virtue of that act, *viz.* the act of 6 *Geo*. 2, *c*. 31.

It is the preliminary commitment, made simply on a charge being made against him from which he is relievable in England, if no order is made in six weeks, not a *commitment in execution under an order after an order has been made.*   Of this I have no doubt.

The question, then, simply is this, is our law the same with the English law, the legislature having adopted the same words ? or is it different, in consequence of the different laws being put together into one ?   In my opinion the law is the same.   If this construction does not prevail, there is no remedy left for enforcing the order of filiation and maintenance, if not made until after six weeks from the child's birth.

Suppose the putative father goes away on a voyage after committing the deed, and does not return till the expiration of a year, nothing can be done with him, though abundantly able. He cannot be arrested or imprisoned ; no execution can be issued against his property ; no remedy in fact exists.

- The very form of the discharge in cases arising under the 4th section implies the fact, that no order at all has been made, as well as that six weeks have elapsed, and he cites that fact as the ground of the warrant of discharge.   And if such is the construction of the English statute, I have no hesitation in saying that the construction of ours is the same.

Upon the view I have taken of the question, the defendant's commitment is legal, and his discharge is refused.

The case was argued before the CHIEF JUSTICE and Justice RANDOLPH, by *Parker*, for *mandamus*, and *A. Whitehead*, contra.

*Parker* for *mandamus.*

1. *Mandamus* is a proper remedy in this case. 3 *Bl. Com.* 110; 5 *Halst.* 58 *Roberts* v. *Holesworth;* 1 *Halst.* 205, *State* v. *Holiday;* 2 *Halst.* 192; 4 *Halst.* 296.

2. It is argued that because, under the English statute, a justice could not discharge from an order of *filiation*, but only from an order for *detention* until the order of filiation is made, that therefore our statute gives no such power. But by incorporating both the English acts into one, and by directing discharge from any commitment under " this act," the legislature expressly authorized it. The rule of construction in such case is settled. 6 *Shep.* 306, *Jones* v. *Jones;* 9 *Porter* 266, *Bartlett* v. *Morris;* *Ib.* 268; 2 *Cranch* 358; 7 *Ib.* 52; *Dwarris on Statutes* 50; 9 *John. R.* 367; 16 *Ib.* 165.

*Whitehead,* in reply.

1. It was clearly the intention of the legislature not to *change* the English statutes, only to *consolidate* them, and the construction contended for arises from a mere slip or oversight in uniting them. Such has always been the construction of the act of 1795.

2. A *mandamus* is not the proper remedy in this case. The justice acted judicially, gave his opinion and decided. This *mandamus* would be to direct him to decide the other way. 3 *Bl. Com.* 110; 19 *Wend.* 56; 20 *Wend.* 658; 3 *Dall.* 42; 1 *Halst.* 157; 2 *Penn.* 576.

The CHIEF JUSTICE delivered the opinion of the court.

An order of filiation and maintenance was duly made, by two justices of the peace of the county of Essex against Thomas Murphy, as the putative father of a bastard child, born in the township of Orange on the 25th of March, 1851. The order bears date on the 5th of June, 1851. The putative father, having made default in not performing the order or giving security, as provided for by the first section of the act concerning bastards, was, by the order of the said justices, committed to the common jail of the county of Essex. An application having been made to a justice of the peace for his discharge under the fourth section of the act, on the ground that *the or-*

*der of filiation and maintenance was not made within six weeks after the birth of the child,* the justice refused a discharge. This court is now asked to allow a *mandamus* to compel the justice to grant the application, and discharge the prisoner.

The legality of the decision of the justice depends entirely upon the question, whether the putative father of a bastard child, against whom an order of filiation and maintenance has been made more than six weeks after the birth of the child, and who has been committed to jail for not performing that order, can be discharged from imprisonment under the fourth section of the act for the maintenance of bastard children. (*Rev. Stat.* 903.)

The provision of the fourth section is, that upon application made by any person committed to jail *by virtue of this act,* &c., he shall be discharged, if no order appears to have been made within six weeks after the birth of the child. This language is broad enough to include as well persons committed under the *first,* as those committed under the *second* section of the act. What is the real intent of the enactment, will be best ascertained by considering the origin and design of the leading provisions of the law, and the particular structure of the section more immediately in question.

The *first* section of our act is substantially a copy of the English statute of 18 *Eliz. c.* 3. The *second, third,* and *fourth* sections are almost a literal transcript of the first, second, and third sections of the statute 6 *Geo.* 2, *c.* 31. As the English statutes stood, there could be no question as to their true meaning, and the doubt under our statute is created, not by any change of phraseology, but simply by embodying the two English statutes into one. So that the phrase, " this act," as transferred from the statute of *Geo.* 2 to the fourth section of our act, is made, in terms, to apply not only to the statute of *Geo.* 2, as it originally did, but also to the statute of *Elizabeth,* embodied in the first section of our act. To express with precision the idea of the English statutes, the phraseology of the fourth section of our act would be, " that upon application made by any person committed to jail by virtue of the *second*

section of this act, he shall be discharged, if no order appear to have been made pursuant to the *first section of this act* within six weeks," &c. As it stands upon the English statute book, that section is simply a proviso, that if any person is committed to jail or the house of correction by virtue of the act 6 *Geo.* 2 (corresponding to the second section of our act), he shall be discharged from imprisonment, if no order of filiation and maintenance be made within six weeks after the birth of the child. *Bac. Abr. tit. "Bastardy," D.* 521–2–3–4.

The object of the entire law is to compel the father or the mother of a bastard child to support it, and thereby relieve the township from its support. The first section, which was the statute of Elizabeth, gives authority for what is familiarly termed the order of filiation and maintenance. It empowers two justices to take order for the better relief of the township and for the keeping of the bastard child, by adjudging who is the father, and what sum the mother or reputed father shall pay weekly, or at other stated times, for its support and maintenance. Upon the order being made, the party charged may either give security to perform it, or to appear at the next Court of Quarter Sessions in the county, and abide such order as that court shall make; or if the sessions make no order, then to abide the order of the justices. If such security be not given, that is, if the party charged will neither appeal from the order, or give security to perform it, he shall then, by order of the justices, be committed to the house of correction or common jail of the county, there to remain without bail or mainprise. The order of filiation and maintenance is an adjudication in the nature of a final judgment, and, unless appealed from, is final and conclusive upon the parties. *Donnelly* v. *Vandenbergh,* 3 *J. R.* 27; *Wallsworth* v. *Mead,* 9 *Jr.* 366; *The People* v. *Rappelyea,* 16 *J. R.* 165. See also *Burr. Sett. Cas.* 168, 192, 276, 551.

The order of the justices committing the party charged with the maintenance to jail, is in the nature of an execution of that final judgment, designed to carry it into execution, and to enforce compliance with its mandate. And when the party can be found, this is the only mode of enforcing the judgment;

though, if he absconds, his property may be seized, and appropriated to the maintenance of the child, under the provisions of the fifth section of the act. After the order of the justices committing the defendant to jail under the first section of the act, the statute contemplates no further proceedings. The judgment is rendered, and the sentence executed.

This order of filiation and maintenance may, by the statute of Elizabeth, be made at any time after the birth of the child, whenever it shall become chargeable to the township. No time is limited within which the order is to be made, so that it be made before the child is twenty-one years old. *King* v. *Mills,* 10 *Mod.* 271; 1 *Burns' Just.* 280.

But, by the provisions of this section, the statute of Elizabeth, no step could be taken to charge, either the father or the mother, till the child was born and had actually become chargeable. *King* v. *Nelson, Vent.* 37; *Comberback* 39; *Penn.* 870; *Grif. Tr.* 356; *N. Jersey Justice* 162. In consequence of which the act was often rendered inoperative by the father and mother absconding before the child had become chargeable. This led to the enactment of the statute 13 and 14 *Car.* 2, c. 12, § 19, (corresponding with the fifth section of our act) which authorizes the goods and the profits of the lands of the absconding parents to be seized and appropriated to the relief of the township, in bringing up and providing for the child. The law, however, was still found to be in many instances ineffectual, for the father, though of ability to maintain the child, might abscond before the child became chargeable, leaving no property behind him. This gave rise to the statute of 6 *Geo.* 2, which is embraced in the *second, third,* and *fourth* sections of our act. This statute provides, that if any woman shall be delivered of a bastard child, which shall be chargeable, or likely to become chargeable to any township, or shall declare herself to be with child, and that such child is likely to be born a bastard, and chargeable to any township, and shall, upon oath before a justice of the peace of the county, charge any person with having gotten her with child, such justice shall, upon application for that purpose by an overseer of the poor, issue his warrant for the apprehension of the person so charged;

and, upon his arrest, shall commit him to the house of correction or common jail of the county, unless he either give security to indemnify the township, or enter into recognisance to appear at the next sessions, and abide such order as shall be made in pursuance of the act.   The obvious design of this section is to compel the putative father to give security to indemnify the township, in the event of its becoming liable for the maintenance of the child.   It authorizes the father to be arrested, and detained until an order of filiation and maintenance may be made under the provision of the first section of the act.

He is arrested and committed upon the mere charge of the woman, that he has gotten her with child.   No trial can be had ; no investigation of the truth of the charge can be made before the justice ; no final adjudication can be made by him.   No original order can be made, even by the sessions.   Their jurisdiction is appellate merely.   They can only act upon an appeal from the order of the justices.   *Slater's case, Cro. Car.* 470 ; *Rex* v. *England,* 1 *Strange* 503 ; 1 *Burns' Just.* 284 ; *Elmer's Forms* 48 ; *Elmer's Dig.* 40, *note.*

The party charged must therefore either give security, or go to jail, and there remain until the child be born, and an opportunity be afforded to make out an order of filiation and maintenance under the provision of the statute of Elizabeth, (the first section of our act).

But it may happen that the woman making the charge shall die, or be married before she is delivered, or she may miscarry, or may appear not to have been with child.   And hence the first proviso of the statute of *George* 2, the third section of our act, which provides that in either of these contingencies the person charged as the father shall be, at the next sessions, immediately released out of custody.

But, again, the person is arrested and detained upon a mere charge of being the father of the child, the truth of which he has no means of repelling or investigating until an order of filiation and maintenance be made.   That order cannot be made, as we have seen, till the child is born, and has become chargeable, though it may be made years after the birth.   To guard, then, against an unreasonable detention of the prisoner,

another proviso is added to the statute of *George* (contained in the fourth section of our act), which is, that the person so committed shall be discharged from imprisonment, if no order of filiation and maintenance shall be made within six weeks after the woman shall have been delivered. This discharge does not avoid the order of filiation and maintenance, if made, nor does it prevent such order from being subsequently made; it merely relieves the person from being held longer in custody to await the making of the order. 1 *Burns' Just.* 280; *Ewing's N. J. Justice* 161.

This is the clear and unequivocal provision of the English statutes; it is the undoubted reason, intent, and policy of ours. It has so been understood by the elementary writers, in their commentaries upon our law. *Grif. Treat.* 361, 362; *N. Jersey Justice* 160, 161.

If this section be construed to relieve from imprisonment a person in confinement upon execution under the first section of the act, for not obeying an order of filiation and maintenance, it leads to the manifest subversion of the design and policy of the law. For, upon such construction, it must be insisted either that no order of filiation and maintenance is valid, if made more than six weeks after the birth of the child, or if valid, that it cannot be enforced by imprisonment. If it be void, then all that is necessary to evade the statute would be for the mother or father to prevent the child from becoming chargeable for six weeks after its birth. If the order be valid, but the imprisonment illegal, then the order is nugatory. For there is no mode of enforcing it against the will of the party but by imprisonment. Such results could never have been within the contemplation of the legislature.

I am strongly disposed to concur in the view expressed by the magistrate, that where two or more statutes, whose meaning is plain or whose construction has been long settled, are consolidated into one, without any change of phraseology, the same construction ought to be put upon the consolidated act as was given to the original statutes. But, without resting upon this point, it seems clear that a different construction ought not in such case to be adopted, if thereby the policy of the act is

subverted or its material provisions defeated. The law is not to be construed by its mere letter. The *intent* of the legislature is to be ascertained from the context, the effects and consequence, and the reason and spirit of the law.

In what has been already said, I have considered the case as though the words of the fourth section did naturally or necessarily apply to the first section of the act. But a careful examination of the act will, I think, clearly demonstrate that, upon the most strict literal interpretation, the fourth section cannot be construed to relate to the first section of the act. It has already been said that the third and fourth sections are mere provisos of the second section. They were so by the statute of *George.* They are so by their grammatical construction and relation in our act, as clearly as if they had been included in one and the same section. The proviso of one section is designed to limit the meaning or qualify the operation of that section alone, not of the entire act.

Again, the person imprisoned is, by the provision of the fourth section, to be discharged, if no order shall appear to have been made within six weeks after *such woman* shall have been delivered. What woman? Obviously the woman specified in the preceding proviso, *viz.* the woman so *charging* any person as aforesaid. This, it is admitted, relates to the second section, which provides that if a woman delivered, or likely to be delivered, of a bastard child *shall charge any person* with having gotten her with child. But no woman is referred to in the first section as charging any person. The contingencies provided for in the third and fourth sections are the death or marriage of the woman (making the charge specified in the second section) before her delivery or her miscarriage, or her proving not to have been with child, or no order being made within six weeks after her delivery. In very terms the provision of the fourth section is limited in its application to the second section of the act.

Again, it is worthy of notice that the first section of the act authorizes the imprisonment both of the *father* and of the *mother* of the child. The second section authorizes the imprisonment of the *father* alone. The fourth section provides

for the discharge of the father alone. If designed to apply to a commitment under the first section, it would have provided for the discharge of the mother as well as the father.

Though it afford no legitimate ground to control or influence the judicial construction of the statute, it is yet interesting and satisfactory to know that there is the clearest evidence, incidentally afforded, that there was no intention in the draftsman of our act, or in the legislature that enacted it, to alter or modify the interpretation of the English statutes. The original act for revising and digesting the laws, passed on the 24th of November, 1792, (*Pamph.* 794) merely authorized Governor Paterson to collect and to reduce into proper form all the statutes of England and of this state which then remained in force here, and, where several laws related to the same subject matter, to reduce them into one law. By the act of the 29th of May, 1793, (*Pamph.* 843) he was authorized, according to his discretion, to *alter and modify the criminal law;* and by the act of the 19th of March, 1795, (*Pamph.* 1074) he was authorized, according to his discretion, to collect, *alter, and modify* such of the laws as he had not then reported on. The act in question, as appears by the Senate Journal, was reported by him on the seventh day of November, 1794, and became a law on the 26th of February, 1795, before the passage of the last mentioned act. At the time the revisor drew the act, he had no power either to alter or modify the law, and it was clearly so understood both by himself and by the legislature. And it also appears, by the original draft of the bill in his own handwriting, that it was drawn and reported by him containing the identical provisions of the English statutes, and in the exact shape in which it now stands, except that the third proviso of the statute of *George* was reported as the fifth section of our act. That section was subsequently sticken out in council. Inasmuch, then, as the revisor had no authority to alter the law, and as he reported the act, so far as the point now under consideration is involved, in the precise words of the English statute, it is safe to conclude that no alteration was intended.

The order of the justice, refusing to discharge the prisoner, was right, and upon this ground (without intimating any

opinion upon the question, whether a *mandamus* is the appropriate remedy) the *mandamus* must be denied.

*Mandamus* refused.

CITED *in State* v. *Hale*, 1 *Dutch.* 328.